UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **TONY BARNWELL,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No.: 2:23-cv-00997-AMM |
| ) | |
| **CITY OF LEEDS, ALABAMA,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Tony Barnwell brings this action against defendant the City of Leeds, Alabama, asserting claims of discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA") and retaliation under Title VII of the Civil Rights Act of 1964. Doc. 1. This action is before the court on the motion of defendant Leeds for summary judgment. Docs. 31, 32. Defendant Leeds contends summary judgment is proper because it did not discriminate or retaliate against Mr. Barnwell. Doc. 32. For the reasons explained below, the motion is **GRANTED**.

**I.    BACKGROUND**

Sergeant Tony Barnwell began his career in law enforcement in 1991 and currently serves as a sergeant in the Leeds Police Department. Doc. 30-1 at 4; Doc. 33-1 at 1; Doc. 33-8 at 48. Sergeant Barnwell has been a police officer in the City of Leeds since 2013, and he has served as a sergeant within the department

since 2017. Doc. 33-8 at 48. Prior to his time with the City of Leeds, Sergeant Barnwell worked as a police officer with the City of Birmingham from 1991 to 2012. *Id.* During his time with the Birmingham Police Department, Sergeant Barnwell also served as a field training officer and a traffic homicide investigator. *Id.* On the date relevant to the charges in the complaint, Sergeant Barnwell was fifty-six years old. Doc. 33-1 at 1; Doc. 34 at 2.

Jacob Scott began his career in law enforcement in 2006. Doc. 30-5 at 23. In 2007, Mr. Scott joined the Leeds Police Department. *Id.* He spent his first seven years with Leeds PD in the Patrol Division, and in 2014, became a detective. *Id.* In 2019, Scott was promoted to sergeant and assigned to the patrol division. *Id.* In his sergeant role, Sergeant Scott was a body cam administrator, training coordinator, and the sergeant over firearms. *Id.* In 2021, Sergeant Scott assumed the duties of a vacant lieutenant role. *Id.* At the date relevant to the charges in the complaint, Sergeant Scott was thirty-nine years old. Doc. 33-1 at 1; Doc. 34 at 3.

In January of 2022, Sergeant Barnwell approached his supervisor, Chief Paul Irwin, to inquire about a potential promotion to the rank of lieutenant. Doc. 34 at 3. At that time, Chief Irwin stated he did not intend to promote anyone to the position of lieutenant. *Id.* at 4. To qualify for the lieutenant position, candidates must first obtain a certain score on the lieutenant placement exam, and then the department is notified of the candidates obtaining a sufficient score. *Id.* at 3; Doc. 30-4 at 32. In

2

April of 2022, Chief Irwin announced upcoming promotions, which included one promotion to the rank of lieutenant. Doc. 30-1 at 9; Doc. 34 at 4. Shortly thereafter, Chief Irwin held a promotional meeting where he instructed all potential candidates to submit a promotional packet. Doc. 34 at 4–5. On April 20, 2022, Chief Irwin interviewed two candidates for the lieutenant position: Sergeant Barnwell and Sergeant Jacob Scott. *Id.* at 5; Doc. 30-4 at 12.

Sergeant Barnwell contends he was the most qualified for this position because (1) he scored higher than Sergeant Scott on the lieutenant placement exam, and (2) Sergeant Barnwell had more supervisory experience than Sergeant Scott. Doc. 34 at 14–15. Ultimately, Chief Irwin chose Jacob Scott for the lieutenant position. Doc. 30-1 at 10. Sergeant Barnwell asserts he did not receive the promotion due to his age. Doc. 34 at 9–19. Sergeant Barnwell offers the following evidence to support this claim: (1) "[a]t the same time that Barnwell expressed interest in becoming lieutenant, Chief Irwin handed Barnwell a questionnaire asking Barnwell to explain his 5, 10, and 20 year goals with the department[,]" which Sergeant Barnwell interpreted as age discrimination, *id.* at 4;[1] (2) Chief Irwin only decided to promote someone to the lieutenant position once Jacob Scott was eligible for the

---

[1] Leeds asserts all employees of the Leeds Police Department—not just Sergeant Barnwell—filled out the questionnaire upon Chief Irwin's arrival at the department. Doc. 35 ¶¶ 17, 19. Leeds states the questionnaire was "simply used by a new police chief to get to know his new employees" and not preserved for an official purpose. *Id.*

3

position, even though Chief Irwin knew Sergeant Barnwell previously expressed interest in the position; and (3) Chief Irwin gave contradictory reasons for his decision to hire Sergeant Scott for the position over Sergeant Barnwell, *id.* at 9–19.

Sergeant Barnwell filed an EEOC Charge of Discrimination on September 22, 2022. Doc. 33-1 at 1. In Leeds's response to the EEOC claim, the City stated that it promoted Sergeant Scott due to his strong leadership skills and recommendations from leadership within the police department who had worked with both Sergeant Barnwell and Sergeant Scott. Doc. 33 at 2; Doc. 33-11. Additionally, Chief Irwin stated he did not promote Sergeant Barnwell based on input from leadership both within the Leeds Police Department and other departments, Sergeant Barnwell's reputation as a "complainer," and complaints from other employees about Sergeant Barnwell. Doc. 33-11. In his deposition testimony, while Chief Irwin reiterated his prior reasoning, he also provided additional reasons including Sergeant Barnwell's disciplinary record and unsatisfactory answers to interview questions. Doc. 30-4 at 18, 20–21.

Following his EEOC charge, Sergeant Barnwell maintains he began to experience retaliation within the department. Doc. 34 at 19–22. Sergeant Barnwell testified that prior to the filing of the EEOC charge, he requested a take-home vehicle. Doc. 30-1 at 22–23. Chief Irwin denied Sergeant Barnwell's request, "stating that the City's policy did not allow officers who lived more than 25 miles

4

away to take home [a] vehicle." Doc. 34 ¶ 47. Sergeant Barnwell testified that after he filed the EEOC charge, Chief Irwin let other officers living further than twenty-five miles from the department take home a vehicle. Doc. 30-1 at 22–23. Ultimately, Chief Irwin granted Sergeant Barnwell's request, but Sergeant Barnwell contends he was given a take home vehicle only because he filed this action.[2] *Id.*

Sergeant Barnwell also contends that requests for training courses were denied following the EEOC charge, while requests for training prior to the EEOC charge were approved. *See id.* at 21–22. Additionally, Sergeant Barnwell states he was the only sergeant within the Leeds Police Department whom Chief Irwin did not invite to attend the Chief's conference with him.[3] Doc. 34 at 8.

Sergeant Barnwell filed this action on July 28, 2023, alleging violations of the Age Discrimination in Employment Act of 1967 and Title VII of the Civil Rights Act of 1964. Doc. 1. Count One alleges the City of Leeds "violated the ADEA when it promoted a younger, less qualified employee, Jacob Scott (39 years old), over Plaintiff (57 years old)." *Id.* at 6. Count Two alleges Sergeant Barnwell "suffered

---

[2] Leeds disputes this fact and asserts one officer allowed a take-home vehicle was hired prior to Sergeant Barnwell's EEOC charge, and the other officer was hired eight months after Sergeant Barnwell's EEOC charge. Doc. 35 at 9, 16.

[3] Leeds states other officers expressed interest in attending the conference, and Sergeant Barnwell did not. Doc. 35 at 10. Additionally, Leeds states Sergeant Barnwell received sixteen hours of training at other conferences, while the officers attending the conference received only twelve. *Id.* at 10, 17.

adverse employment actions" that "deprive[d] Barnwell of the right to oppose discriminatory business practices in violation of the ADEA of 1967 and Title VII of the Civil Rights Act of 1964." *Id.* at 7. Sergeant Barnwell states that the City of Leeds's discrimination "proximately caused Barnwell to suffer great economic harm, loss wages [sic], emotional distress, mental anguish and trauma," and that the City's retaliatory actions caused "embarrassment, humiliation, mental distress and emotional pain and anguish." *Id.* at 6–7.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in

6

the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015).

In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). If the movant carries its burden in either of the two ways, the burden shifts to the non-movant "to show the existence of a genuine issue [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Rollins v. TechSOUTH, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987).

When a nonmoving party fails "to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23.

### III.   ANALYSIS

### A. Discrimination Under the ADEA

The ADEA prohibits employment discrimination against individuals who are at least forty years old. 29 U.S.C. §§ 623(a)(1), 631(a). To establish a prima facie case under the ADEA, "A plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 176 (2009). In other words, "[u]nlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a **motivating** factor." *Id.* at 174 (emphasis added). However, as an initial step, a court analyzes an ADEA claim under the *McDonnell Douglas* framework as it would in a Title VII claim, which asks whether discrimination was the outcome-determinative reason for the employment action. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332–33 (11th Cir. 2013).

Under the *McDonnell Douglas* framework, at step one, the plaintiff has the burden of setting out a prima facie case of discrimination by showing "(1) that he is a member of the protected group; (2) that adverse employment action was taken against him, *e.g.* discharge, demotion, failure to hire; (3) he was replaced by a person outside the protected group; and (4) he was qualified for the position for which he was rejected." *Pace v. S. Ry. Sys.*, 701 F.2d 1383, 1386 (11th Cir. 1983). If an employee meets the initial burden, at step two, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the employment decision.

8

*Rosado v. Sec'y, Dep't of the Navy*, 127 F.4th 858, 866 (11th Cir. 2025). At step three, the employee must demonstrate the employer's proffered reasons to be pretextual for discrimination. *Id*.

"To survive summary judgment, a plaintiff must present sufficient evidence for a reasonable jury to conclude not just that the employer's proffered reasons for [the employment decision] were ill-founded but that unlawful discrimination was the true reason." *Phillips v. Legacy Cabinets,* 87 F.4th 1313, 1323 (11th Cir. 2023) (cleaned up). An employee can establish pretext by demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (cleaned up). "If the employer proffers more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive a motion for summary judgment." *Crawford v. City of Fairburn*, 482 F.3d 1305, 1308 (11th Cir. 2007). If a plaintiff fails to rebut even one nondiscriminatory reason, a court may grant summary judgment for the employer. *See id.*; *see also Smelter v. S. Home Care Servs. Inc.,* 904 F.3d 1290–91 (11th Cir. 2018) (holding additional pretext arguments need not be addressed if the plaintiff fails to rebut even one nondiscriminatory reason).

9

Unlike a Title VII claim, in an ADEA claim, "[t]he burden of persuasion does not shift to the employer to show that it would have taken the action regardless of age, even when a plaintiff has produced some evidence that age was one motivating factor in that decision." *Gross,* 557 U.S. at 180. In other words, "[a] plaintiff must prove by a **preponderance of the evidence** (which may be direct or circumstantial), that age was the 'but-for' cause of the challenged employer decision." *Id.* at 177–78 (emphasis added). If the employer's reasons for the employment decision are reasons that "might motivate a reasonable employer," the plaintiff's subjective opinion of the employer's decision does not establish pretext. *Combs,* 106 F.3d at 1543.

The parties do not dispute that Sergeant Barnwell established a prima facie case under the ADEA. At the time he applied for the lieutenant position, (1) he was over forty years of age; (2) he was not hired for the position; (3) he was qualified for the position; and (4) the candidate hired for the position was under forty years of age. Sergeant Barnwell states that "Defendant essentially argues that Plaintiff was not selected for the position of lieutenant because 1) Jacob Scott was a much better candidate than Barnwell, 2) Barnwell's disciplinary history, and 3) Barnwell's lack of leadership." Doc. 34 at 11. Sergeant Barnwell asserts he has presented "sufficient circumstantial evidence to show that the reasons stated by Defendant were pretextual and circumstantial evidence to show that these reasons are plagued with inconsistencies and contradictions[.]" *Id.* The court will evaluate whether Sergeant

Barnwell provided sufficient evidence to establish pretext in the City's proffered reasons.

Chief Irwin, corporate representative for Leeds, testified that while assessing the entire records of both Sergeant Barnwell and Sergeant Scott, Sergeant Scott was the preferred candidate. *See, e.g.*, Doc. 30-4 at 14–16. Additionally, Leeds consistently stated that Sergeant Scott received the recommendation of Captain Ronald Reaves, who worked with both Sergeant Barnwell and Sergeant Scott during their entire tenure at the City of Leeds Police Department. Doc. 30-6 at 40–41; Doc 30-4 at 33; Doc. 33-11. Sergeant Barnwell asserts he is the better candidate because he scored higher on the lieutenant examination, had additional years in law enforcement, and had two more years of experience as a sergeant than Sergeant Scott. Doc. 34 at 14–16.

Since the filing of Sergeant Barnwell's EEOC charge, Leeds has stated it evaluated each candidate's entire record—not just years of experience or test scores—in making the promotional decision. Leeds maintains it chose Jacob Scott based on the positions he held in law enforcement, his leadership capabilities, and the recommendation of the supervisor of both candidates. Doc. 30-4 at 16; Doc. 33-11. Sergeant Barnwell has not offered any evidence of inconsistencies under this proffered reason or refuted the City's assertions regarding Sergeant Scott's capabilities as a qualified candidate. While a different employer may have chosen

Sergeant Barnwell over Sergeant Scott or handled interviews differently than Chief Irwin, Leeds has offered multiple reasons that might motivate a reasonable employer to hire Sergeant Scott for the lieutenant position over Sergeant Barnwell. *See Combs,* 106 F.3d at 1543.

Because Sergeant Barnwell's failure to rebut one nondiscriminatory reason is sufficient to warrant summary judgment for the employer, the court will not address his remaining pretext arguments. *See Crawford*, 482 F.3d at 1308. This court finds that manner of proceeding proper because Leeds did not provide inconsistent reasons for its employment decision: each reason reiterated why the City considered Sergeant Scott to be the better candidate. Chief Irwin did not mention Sergeant Barnwell's disciplinary record in the initial EEOC response. However, this is an additional reason, not an inconsistent one, for why Leeds deemed Sergeant Scott to be the better candidate for the lieutenant position. *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998) ("[T]he existence of a possible additional non-discriminatory basis for [an adverse employment action] does not, however, prove pretext.").

As Sergeant Barnwell failed to rebut the City's consistent, nondiscriminatory reasons for promoting Sergeant Scott, he has failed to establish that the but-for cause of the employment decision was due to discrimination based on his age. Accordingly, summary judgment is **GRANTED** as to Count I.

## B. Retaliation under the ADEA and Title VII

Both the ADEA and Title VII prohibit an employer from retaliating against an employee because he or she complained of an unlawful employment practice. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). "'[E]mployers cannot retaliate against employees who have complained about—that is, opposed—discrimination' based on sex, age, or other protected characteristics." *McCreight v. AuburnBank*, 117 F.4th 1322, 1339 (11th Cir. 2024) (quoting *Martin v. Fin. Asset Mgmt. Sys., Inc.*, 959 F.3d 1048, 1053 (11th Cir. 2020)). To establish a retaliation claim under both the ADEA and Title VII, a plaintiff must show "(1) a protected activity, (2) an adverse employment action, and (3) a causal connection between them." *Id.*

In a retaliation claim, an adverse employment action is an act that would "dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. v. White,* 548 U.S. 53, 57 (2006). The materiality of the alleged adverse action is judged by an objective standard. *See Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 861 (11th Cir. 2020) (citing *Burlington*, 548 U.S. at 68)). Precedent "strongly suggests that it is for a jury to decide whether anything more than the most petty and trivial actions against an employee should be considered 'materially adverse' to him and thus constitute adverse employment actions." *Crawford v. Carroll*, 529 F.3d 961, 973 n.13 (11th Cir. 2008). To establish a causal connection between the protected activity and

the adverse employment action, a plaintiff must show "that the protected activity and the adverse action were not wholly unrelated." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1135–36 (11th Cir. 2020) (en banc) (quoting *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277–78 (11th Cir. 2008)). This may be established by showing close temporal proximity between the protected activity and the adverse action, but without additional evidence, the proximity must be very close. *Tolar v. Bradley Arant Boult Cummings, LLP,* 997 F.3d 1280, 1294 (11th Cir. 2021).

The parties do not dispute that Sergeant Barnwell engaged in a statutorily protected activity when he filed his EEOC charge on September 22, 2022, and this action on July 28, 2023. Sergeant Barnwell contends that he suffered two adverse employment actions: (1) not being allowed a take home vehicle and (2) not being invited to attend the Chief's conference. Doc. 34 at 19–22. The court will address whether either action rose to the level of "materially adverse," and whether Sergeant Barnwell established a causal connection between the action and the protected activity.

### 1. Denying Sergeant Barnwell a take home vehicle was not retaliatory.

Sergeant Barnwell asserts that he asked Chief Irwin for a take-home vehicle prior to the filing of his EEOC charge of discrimination, and Chief Irwin denied his request because Sergeant Barnwell lived further than the twenty-five miles from the

police department that policy allowed.[4] Doc. 34 at 20. Sergeant Barnwell states that following the filing of his EEOC charge, Chief Irwin did not strictly enforce the policy and allowed other officers who lived outside of the twenty-five-mile radius to take home their vehicles. *Id.* Sergeant Barnwell contends that Chief Irwin allowed him to take a vehicle home only after the filing of this action. Doc. 30-1 at 23. Because he was the only officer not allowed a take-home vehicle, Sergeant Barnwell states:

> A reasonable employee would find that being denied a take home car would be materially adverse to their employment considering the convenience of not having to drive your personal vehicle to and from work and the financial benefit of not having to be responsible for gas, maintenance, and upkeep of the vehicle. In addition, enforcing the mileage restriction of the take home car policy against only that employee would dissuade a reasonable worker from making or supporting a charge of discrimination.

Doc. 34 at 20.

Although the court agrees with Sergeant Barnwell that a reasonable employee would find a denial of a take-home vehicle to be materially adverse to their employment, Sergeant Barnwell fails to provide any supporting evidence to establish a causal connection between Chief Irwin's denial of a vehicle and the protected

---

[4] Chief Irwin denies Sergeant Barnwell requested a take-home vehicle before the filing of his EEOC charge. Doc. 30-4 at 25. He alleges that after two other officers received take-home vehicles, another sergeant requested a take-home vehicle for Sergeant Barnwell, and Chief Irwin granted the request. *Id.* At this stage, the court draws all reasonable inferences in Sergeant Barnwell's favor.

activity. Sergeant Barnwell's position is that he was denied a take-home vehicle prior to—not following—the filing of his EEOC charge. Doc. 30-1 at 23. While other officers received take-home vehicles following Sergeant Barnwell's EEOC charge as he asserts, Sergeant Barnwell testified he did not request a vehicle after his EEOC charge, or after the other officers received take-home vehicles, or after learning those officers also lived outside the twenty-five-mile radius of the police department. *Id*. Sergeant Barnwell has not presented any evidence that allowing the other officers to take home vehicles was related to his protected activity, nor has he established temporal proximity of the other officers receiving vehicles in relation to his EEOC charge.

     Furthermore, Chief Irwin ultimately allowed Sergeant Barnwell to take home a vehicle. Chief Irwin relaxed the policy for other officers and for Sergeant Barnwell. Sergeant Barnwell asserts that he was only awarded a take-home vehicle following the filing of this action, but that is not evidence of retaliation. Whether Chief Irwin awarded Sergeant Barnwell a take-home vehicle only because he filed this action is irrelevant. Sergeant Barnwell has not provided evidence to support a prima facie case of retaliation regarding this alleged retaliatory action.

### 2. Failing to invite Sergeant Barnwell to the Chief's Conference was not retaliatory.

Sergeant Barnwell asserts he suffered an adverse employment action when he was the only sergeant in the City of Leeds Police Department not invited to attend the Chief's Conference. Doc. 34 at 21. He states, "Any reasonable employee would be dissuaded from initiating or supporting a charge [of] discrimination if it meant that they would be singled out from such activities." *Id.* In his deposition testimony, Sergeant Barnwell states that prior to his EEOC charge, he had never attended a Chief's Conference in the past or under the previous chief of police. Doc. 30-1 at 25. Sergeant Barnwell did not request to attend the conference. *Id.*

Sergeant Barnwell provided no information as to whether exclusion from the Chief's Conference was anything more than the most "trivial and petty" of actions. Even if Sergeant Barnwell could establish that being the only sergeant not invited to the Chief's Conference would dissuade a reasonable employee from making a charge of discrimination, again, he has offered no evidence that Chief Irwin's failure to invite him to the conference is related to the filing of the EEOC charge. Sergeant Barnwell admits to never being invited to the conference in the past, admits he did not attend under the previous police chief, and admits he did not express interest in attending the conference to Chief Irwin. Sergeant Barnwell has not advanced evidence to support a prima facie case of retaliation regarding this alleged retaliatory action.

Accordingly, summary judgment is **GRANTED** as to Count II.

IV. **CONCLUSION**

For the reasons explained above, Leeds's motion for summary judgment, Docs. 31, 32, is **GRANTED.**

**DONE** and **ORDERED** this 25th day of September, 2025.

　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　**ANNA M. MANASCO**
　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE